ED JACKAMONIS, Chairperson Assembly Organization Committee
The Assembly Organization Committee has requested my opinion on two questions involving 1979 AB 353. *Page 215 
That bill, as described in the analysis by the Legislative Reference Bureau, provides:
 This proposal requires each candidate for the legislature, at the time he or she files a declaration of acceptance of nomination, to declare in writing either that he or she will accept the regular statutory salary ($19,767 per year on January 1, 1979) or that he or she voluntarily agrees to accept a specified lower salary. If a candidate who agrees to accept a lower salary is elected, that person is paid the lower amount for his or her entire term. If a candidate agrees to accept a higher salary than the regular salary, the agreement is of no effect.
The first question is whether this bill conflicts with sec.12.11, Stats. In my opinion the answer is yes.
Section 12.11, Stats., prohibits election bribery. Among other things, it forbids promises to give anything of value to any elector in order to induce that elector to vote or refrain from voting for or against a particular person. An offer by a candidate to accept a lesser salary than that fixed by law, or to refund a portion of the salary, violates election bribery statutes. See 21 Op. Att'y Gen. 774 (1932); State ex rel. Newellv. Purdy, 36 Wis. 213 (1874); Sparks v. Boggs, 339 S.W.2d 480
(Ky. 1960); Tipton v. Sands, 103 Mt. 1, 60 P.2d 662 (1936); 26 Am. Jur. 2d Elections sec. 283; and 63 Am. Jur. 2d PublicOfficers and Employees secs. 393 and 394. As explained in 21 Op. Att'y Gen. 774, 776 (1932):
 In view of the express prohibitions of the above quoted statutes, it must be held that an offer to serve for less than the legal salary made by a candidate for office in the course of his campaign for election is in violation of such statutes. of course, so far as bribery is concerned, it is apparent that the amount which any individual taxpayer would gain through the reduction of a public officer's salary would be insignificant. Nevertheless, a proposal by a candidate to serve for a reduced compensation amounts to an offer to give money to the public, and it is apparent that such an offer would appeal to many voters and would tend to gain their favor for the candidate who makes such an offer. The result is, as the courts have pointed out, that if such offers were permitted, it would tend to put an office up at sale for the lowest bidder. A person of means having some personal *Page 216 
and perhaps ulterior motive for seeking said office, might secure his election through such an offer, defeating a better qualified candidate, who, for lack of a sufficient private income, could not afford to meet the offer. Thus, the object of an election, which should be to choose public servants on the basis of their merits regardless of wealth or other irrelevant considerations, would be frustrated. Hence, it is well settled by the courts that an offer by a candidate during an election campaign to serve for less than the prescribed salary is not only a violation of the election bribery statutes but is contrary to public policy.
Were 1979 AB 353 to become law, it could be argued that it constitutes a statutory exception to the election bribery laws. But such an enactment would put public office up for auction, and it would discriminate against poorer candidates. As our supreme court stated in State ex rel. Newell v. Purdy, 36 Wis. at 225:
 So far as we are advised, no judicial tribunal has given any countenance whatever to any practice or act which tends in that direction, but the courts have steadily held that popular elections must be kept free from any taint of corruption, and from all improper or unlawful influences whatever. We have no disposition to depart from this line of adjudication. On the contrary, were the opposite doctrine asserted in any of the cases, we should not follow them. We would not hold that a man may buy a public office . . . just as he would buy a horse at auction, that is, by offering to pay more for it than any other person is willing to pay. We can never give the sanction of this court to a doctrine so pernicious.
The second question asks whether such a bill, if enacted, would be unconstitutional. I believe that it would violate at least one constitutional provision, namely, that the Legislature cannot impose additional qualifications for office.
Wisconsin Constitution art. IV, sec. 6, dealing with the qualifications of legislators, provides: "No person shall be eligible to the legislature who shall not have resided one year within the state, and be a qualified elector in the district which he may be chosen to represent." The Legislature cannot add to these qualifications. See State ex rel. La Follette v. Kohler,200 Wis. 518, 553, 228 N.W. 895 (1930). Following this principle, I have said that requiring a candidate to be a *Page 217 
district resident at the time he files his or her nomination papers, rather than at the time of election, imposes an unconstitutional qualification for office. 65 Op. Att'y Gen. 159 (1976).
Unquestionably 1979 AB 353, by requiring candidates for the Legislature to file their salary declaration along with their nomination papers, imposes a qualification for office. This additional requirement is prohibited unless it comes within the exceptions stated by the supreme court. In Kohler the court upheld requiring candidates to comply with the Corrupt Practices Act on the ground that its violation negated the election itself. In State ex rel. Van Alstine v. Frear, 142 Wis. 320, 125 N.W. 961
(1910), the court upheld a requirement that candidates declare whether they are qualified to serve on the ground that the voter's ballot would be useless if the candidate could not serve. In each case, preservation of the integrity of the electoral process was at stake. Here, the required declaration would not assure the integrity of the election process itself. Accordingly, 1979 AB 353 comes within no exception to the rule that the Legislature cannot impose additional qualifications for office.
There may be additional constitutional infirmities. For example, under the fourteenth amendment to the United States Constitution the state cannot deny the equal protection of the laws. 1979 AB 353 requires only candidates for the Legislature to make a salary declaration. I am at a loss to fathom what rational basis there might be for singling out state legislators. Further, since this bill requires what always has been interpreted to be election bribery, if enacted the bill could be independently vulnerable as destructive of the integrity of the electoral process and not rationally related to any permissible legislative objective.
BCL:CDH