HOWARD G. BJORKLUND, Administrator Division of Law EnforcementServices Department of Justice
On November 11, 1976, I rendered an opinion to you to the effect that sec. 66.11 (1), Stats., requiring United States citizenship of county deputy sheriffs and city police officers, would be unconstitutional under the equal protection clause of the fourteenth amendment to the United States Constitution when applied to resident aliens. 65 Op. Att'y Gen. 273 (1976).
Section 66.11 (1), Stats., provides in part: "No person shall be appointed deputy sheriff of any county or police officer for any city unless he is a citizen of the United States."
I have decided to withdraw that opinion in light of the United States Supreme Court decision in Foley v. Connelie, 435 U.S. 291, 46 USLW 4238, announced March 22, 1978, in which the Court upheld the constitutionality, on the equal protection issue, of a New York statute challenged by a resident alien seeking employment as a New York State Trooper.
The New York statute, Executive Law sec. 215 (3), provides: "No person shall be appointed to the New York State police force unless he shall be a citizen of the United States." *Page 62 
Because of the similarity between the Wisconsin and New York statutes, I consider this decision current authority, and I now conclude that the citizenship requirement of sec. 66.11 (1), Stats., is constitutionally valid.
The Court in Foley, supra, applied the same analysis that I applied in 65 Op. Att'y Gen. 273 (1976). Generally, a classification based on citizenship is "suspect." The courts will strictly scrutinize it. And absent a compelling state interest to justify a law treating resident aliens and citizens differently, the classification will fall under the equal protection clause of the fourteenth amendment. Graham v. Richardson, 403 U.S. 365, 372
(1971). As I noted previously, however, the Court in Sugarman v.Dougall, 413 U.S. 634, 647 (1973), suggested there may be an exception to the "strict scrutiny" standard of review in some cases. There the Court stated that citizenship may be a relevant qualification for fulfilling those "important nonelective executive, legislative and judicial positions," held by "officers who participate directly in the formulation, execution, or review of broad public policy." But the Sugarman case did not turn on this statement.
Since the possible exception to Graham carved out in Sugarman, was dictum, one could do little more than speculate regarding its scope and authoritativeness. On the basis of the legal authority existing in 1976, I concluded that sec. 66.11 (1) did not come within the Sugarman exception. I stated that police officers do not participate directly in "formulating or reviewing" questions of broad public policy. I reasoned that chiefs of police and sheriffs, who have a broader police function, need not be United States citizens. State ex rel. Evjue v. Weatherly, 255 Wis. 225,228, 38 N.W.2d 472 (1949). Therefore, I could not conclude that citizenship was essential to the quality of police officers and sheriff's deputies.
But in Foley, supra, the Court adopted the Sugarman exception in its holding, and it extended it to the question you posed two years ago. I must now advise you that sec. 66.11 (1), Stats., constitutionally falls within the exception. The Foley Court stated:
 Police officers in the ranks do not formulate policy, per se, but they are clothed with authority to exercise an almost infinite variety of discretionary powers. The execution of the broad powers vested in them affects members of the public significantly and often in the most sensitive areas of daily life . . . . *Page 63 
. . . .
 Clearly the exercise of police authority calls for a very high degree of judgment and discretion.
435 U.S. 298, 46 USLW 4239.
The fact that chiefs of police and sheriffs need not be citizens in Wisconsin does not detract from the highly discretionary duties of the line police officer. Moreover, the citizens of Wisconsin may exercise more direct control over these officers than they may over appointed police officers and sheriff's deputies. Sheriffs are accountable to all electors of the county. Wis. Const. art. VI, sec. 4. These electors must be United States citizens. Wis. Const. art. III, sec. 1; sec. 6.02, Stats. Police chiefs are accountable to the city's police and fire commissioners, sec. 62.13 (3), Stats., who must be citizens, sec. 62.13 (1), Stats.
Thus, Foley is controlling for the proposition that police officers fall within the category of "`important non-elective . . . officers who participate directly in the . . .execution . . . of broad public policy.'" 435 U.S. 300, 46 USLW 4240. We are bound by the Court's holding that the citizenship requirement bears a rational relationship to a legitimate state concern in protecting the right of citizens to choose their governors. 435 U.S. 300, 46 USLW 4240.
There now may be resident alien police officers or deputy sheriffs who were appointed as a result of the 1976 opinion. I do not believe my opinion today mandates that existing resident alien police officers or deputy sheriffs be terminated. Such result would be harsh and inequitable. Foley does not state that resident aliens may not be police officers; merely that it is constitutionally permissible to make United States citizenship a condition for appointment. And the 66.11 (1), Stats., proscription applies to the appointment of a deputy sheriff or police officer.
BCL:WHW *Page 64